**People of the State of Illinois, Plaintiff-Appellee, v. Lorenz Bliss, Defendant-Appellant.**

Gen. No. 50,313.

First District, Third Division.

July 14, 1966.

Rehearing denied December 2, 1966.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall A. Patner, Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James Klein, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

Lorenz Bliss was indicted for selling narcotics. A jury found him guilty and the court imposed a penitentiary sentence of ten to fifteen years.

The contentions made in this appeal are (1) the cross-examination of the chief witness for the prosecution was unduly limited; (2) an instruction bearing upon this witness' credibility was erroneously refused; (3) the credibility of this witness was improperly rehabilitated; (4) the State was allowed to present evidence that the defendant was guilty of crimes other than the one for which he was indicted and (5) the defendant's counsel was improperly restricted in his final argument to the jury.

The State's chief witness was James Wilson, an informer. On the night of June 14, 1963, he conversed with Officer Thomas King of the Chicago Police Department Narcotic Unit at the department's Central Police Station. After being searched he entered the automobile of Officer Howard Anthony and was driven to the vicinity of 39th Street and Cottage Grove Avenue, Chicago. Around 11:00 p. m., while Wilson and Anthony were sauntering about they met Bliss, an old acquaintance of Wilson's. Wilson told Bliss that his friend wanted to buy some narcotics. Bliss said he had "some stuff" but would not do business with a stranger. Wilson turned to Anthony and was given $70. Wilson gave the money to Bliss as they walked across the street towards Bliss' car. They entered the car and drove away. Anthony followed them across the street but Bliss would not allow him to accompany them. At 60th and Morgan Streets Bliss left the car. He returned in about 20 minutes and gave Wilson, who had remained in the car, a foil packet. They then drove back to the vicinity of Cottage Grove and 39th where Wilson got out, walked to Anthony's auto and gave him the packet.

Officer King and three other officers followed Anthony's car to 39th and Cottage Grove. King saw Wilson and Anthony talk to a man who he later learned was Bliss. He saw the man and Wilson drive away and trailed them in his unmarked squad car. He testified that he saw the man leave his car and return; Wilson remained in the car and was alone while the other man was absent. The squad car followed them back to where Anthony was waiting and King saw Wilson walk to Anthony's auto. King received the packet from Anthony. A laboratory analysis showed its content to be heroin.

Officer Anthony corroborated the testimony of Wilson as to the events that took place in his presence. He further testified that Bliss first approached them; that he gave the sum of $70 to Wilson because Bliss wanted that amount for a "spoon of heroin." He said Wilson kept the money in his hand. Anthony walked a few paces behind Bliss and Wilson as they crossed the street and he saw Wilson hand the money to Bliss. Bliss refused to let Anthony go along in his car; he said he would get the "stuff" but Wilson would have to act as the in-between man. He saw Wilson leave with Bliss and return with him. Although Anthony, or King and the officers who accompanied him, could have placed Bliss under arrest, they did not do so. He was not arrested until two months later.

The defendant testified that he knew Wilson by the name of Patrick Judge and had known him since he was five years old. He said he was approached by Wilson and a stranger on the night in question and the latter said, "I am trying to get some stuff." Bliss replied, "I don't know what you are talking about" and walked away. Wilson then reapproached him and said he had a chance to get some money out of a man he was with and asked Bliss to help him by driving him away. Bliss was going south and said, "If you want to ride with me you can ride with me." When he arrived at 60th and

Normal he told Wilson this was as far as he was going and asked, "What are you going to do?" Wilson replied he would stay in the car a little while. When Bliss returned 30 or 40 minutes later Wilson was still there. He told Wilson he was driving back to 39th Street, did so and parked his car close to where it had been parked before. Wilson and he then parted. He denied receiving money from Wilson or selling him narcotics.

■■ The first point urged by the defendant is that he was not allowed to cross-examine Wilson about promises of leniency made to him by the police in return for his testimony in this case. It is argued that latitude should be permitted in the cross-examination of an informer and that it is always proper to inquire into a witness' motive for testifying and about his hope for reward or expectations of leniency. We agree that great freedom should be permitted in such a cross-examination and the trial judge in this case allowed just that kind of an examination. An extensive and intensive cross-examination was permitted which brought out that Wilson had made his living by stealing, that he had been addicted to narcotics, that he had been imprisoned, under the name of Patrick Judge, once for selling narcotics and the second time for the possession of them, that he had been arrested in March 1963, and was in jail March and April 1963, on a charge of possessing narcotics and that the charge had been dismissed because of his cooperation with the police. His character, background, possible bias and relations with the police were explored thoroughly. We have perused the record and find no question asked of Wilson which was related to a promise made to him in return for his testimony in the present case. He had been asked questions and he had answered them concerning his not being indicted on the charge for which he was arrested in March 1963. He was then asked repetitious questions about the same subject, one of them being: "Well, they promised you

that [to dismiss the March 1963 charge] didn't they?" An objection was sustained and this is the limited cross-examination complained about. Wilson had already testified that the charge was dismissed and the reason for the dismissal. The question about a promise to dismiss was both repetitious and superfluous. Moreover, the question had nothing to do with the prosecution of Bliss. There was no Bliss case at that time. The Bliss case did not originate until June 1963 and was not tried until August 1964.

The contention that the court erred in refusing an instruction bearing upon Wilson's credibility is likewise predicated upon an inaccuracy. The defense submitted an instruction which stated that, "[T]he testimony of an admitted narcotics addict should be received by the jury with great caution and suspicion and it should be weighed with great care. . . ." The court gave a similar instruction concerning the testimony of an informer but rejected the one dealing with an addict because Wilson had not admitted that he was a narcotics addict. Wilson freely admitted that he had been addicted to drugs for years but denied that he was at the time of the trial. The defendant argues that the instruction was proper because Wilson was using narcotics "up until two months prior to trial, and there was no showing of medical or other cure, and on this record the informer was an addict." There was no evidence that Wilson was a narcotics addict until two months before the trial. Wilson testified that he was treated for his addiction while he was in the County Jail in March and April 1963, that he had been cured and had not used narcotics up to the time of the trial of the present case. The case was tried in August 1964. One year and four months intervened between the cure and the trial. The case of People v. Boyd, 17 Ill2d 321, 161 NE2d 311 (1959), is cited as holding that an addict who has been cured for

two years is still to be considered an addict at the time he testifies at a trial for the purpose of fixing the standards by which his testimony is to be judged. The defendant is also wrong about the Boyd case. There were two informers in the Boyd case. One acknowledged that he had been a dope addict for five or six years. He said that he had been cured a couple of times, the last time about two years before the trial. However, he stated that he "had been off and on dope ever since." The second informer was also a dope addict. He never testified he had been treated for, or cured of, the addiction; he merely said that he "hadn't used dope for about six months." This is far different from the present case wherein the informer testified that he had been treated and cured sixteen months before the trial and that he had not used narcotics since he was cured. There was no evidence to the contrary. Under this testimony Wilson could not be considered a narcotics addict at the time of the trial and he certainly was not an "admitted" addict. The instruction was properly refused.

 The defendant's third point rests on a more secure footing. After the extensive cross-examination of Wilson the State called Officer Anthony as a witness and asked him, over objection, whether he had previous dealings with Wilson and if he found his information to be reliable. He answered affirmatively. A motion was made to strike the answer but it was allowed to stand. At a conference in chambers the court stated that Wilson's credibility had been placed in issue and it was therefore permissible for the State to show that the police had used him as an informer and found him to be reliable. Rehabilitation of Wilson's credibility was permissible but not by the method used. This was not the situation where reasonable grounds for an arrest without a warrant may be established by an arresting officer's testimony as to the past reliability of an informer

(People v. McFadden, 32 Ill2d 101, 203 NE2d 888 (1965); People v. Durr, 28 Ill2d 308, 192 NE2d 379 (1963)). In the trial of an accused the reliability of the informer, if impeached or assailed, cannot be sustained by the arresting officer's, or any other witness', experience with the informer or his personal estimation of the informer's credibility. Wilson's general reputation for veracity could have been shown, but it was error to receive Anthony's individual opinion of his veracity. Gifford v. People, 148 Ill 173, 35 NE 754 (1893).

█ The next point also concerns the testimony of Officer Anthony. The defendant was not arrested until two months after the sale and the State sought to explain that the arrest was delayed because the police wanted time to uncover the source of the narcotics. Anthony was asked the difference between a controlled and an undercover purchase of narcotics. He answered, over objection, that:

> "A controlled buy is the purchase of narcotics which at all times we have a control of the money and the person that is making—attempts to make the purchase and the money is recorded and there is an immediate arrest; whereas an undercover purchase is a purchase where as you make a purchase, you have a delay between making another purchase and you attempt to get to the source of supply."

Anthony then testified that the purchase made from the defendant was "an undercover buy."

█ The defendant sees in Anthony's response implications that he made sales of narcotics other than the one for which he was on trial and that the police knew him to be part of a narcotics ring. The phrasing of Anthony's explanation was infelicitous but the inferences the defendant draws from the explanation are farfetched. The inference could be drawn that the police intended to watch the defendant to see if he made another sale;

but a further inference could be drawn that he made no other sale because, after keeping him under surveillance for two months the police arrested him for the sale to Wilson. Furthermore, even if the defendant's inferences could be said to be reasonable, they could do him no more harm than he did to himself. After his arrest, in denying the sale to Wilson, he said: "I have sold narcotics but I have never sold a $70 package"; and in his testimony he said that Wilson had not asked him for narcotics for more than two years before he ran into him in June 1963. The former statement was an admission of narcotic sales and the latter carried the implication that he had done business with Wilson on prior occasions.

The last point made by the defendant is that the court restricted his attorney's final argument. The point comes about this way: on the night of the sale Wilson told the police that the defendant's name was Lorenz Harris and this name was used by them in their report. In his testimony Bliss said he had never been known by the name of Harris. In his closing argument the defense counsel stated that the State had not produced evidence that the defendant was known as Harris. An objection to this was sustained. It is contended that by sustaining this objection the court hindered the defense in attacking the credibility of the prosecution's case and impaired the defense efforts in convincing the jury that the defendant's version of the night's events was the true one. We see no harm to the defendant in the ruling made by the court. First of all, there was no conflict as to Bliss' right name and no question about his identity. Secondly, the defense counsel was mistaken in his contention. There was evidence in the record that the defendant was known as Harris. After the State had concluded its case the defendant's attorney recalled Officer King for further cross-examination. The questioning pertained to the use of the name "Harris" by the offi-

cers in their police report and by Wilson. On redirect examination the State inquired whether the defendant was known by any name other than Bliss. The witness replied that he was known as Bernard Murray, Lorenz Harris, Lorenz Bliss and by one other name. The court therefore properly curtailed the defendant's argument that the State had not produced such evidence.

█ In our review of the case we have found that just one error was committed: the testimony of the police officer that he had found Wilson to be reliable. The question is whether this error requires the conviction to be reversed. If the State's case depended upon Wilson's testimony we would think that the method used to restore his credibility after it had been attacked was prejudicial error. The defendant contends that the State's case does depend upon Wilson alone. The very first two sentences of the defendant's brief are these: "The conviction rests on the testimony of the informer. No police officer ever saw any transaction occur between the defendant and the informer." These statements are patently incorrect. The police officers did see transactions occur between Wilson and Bliss and their testimony substantiated important elements of Wilson's testimony. The officers were with him when he talked to Bliss; they heard Bliss say that he had narcotics and would sell some to Wilson; they heard Bliss ask for $70; they saw Wilson give Bliss the money; they saw Wilson ride away with Bliss and return with him; they kept Wilson under constant observation and saw him talk to no one but Bliss; they searched Wilson before he met Bliss and no narcotics were found on him; after he returned from being with Bliss he had a package of heroin. He must have gotten the package from Bliss or found it in Bliss' car; that he got it from Bliss is proved by the conversation Officer Anthony had with Bliss. The only link in

242

the chain of events that the police did not see was Bliss handing the heroin to Wilson. This missing link is not consequential in view of the many links they did witness. The corroboration given Wilson's testimony established the truth of his testimony. The fact that he had been found reliable in past transactions was relatively unimportant evidence-wise because of the fact that his veracity in the present transaction was convincingly established by the supporting testimony of the police officers. Under the facts of this case we do not believe the error was prejudicial.

The judgment of the Criminal Division of the Circuit Court will therefore be affirmed.

Affirmed.

SULLIVAN, P. J. and SCHWARTZ, J., concur.