THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES REDDING *et al.*, Defendants-Appellants.

First District (4th Division)   No. 60954

Opinion filed November 17, 1976.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant James Redding.

Daniel D. Mangiamele, of Chicago, for appellant Kenneth Scott.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Iris E. Sholder, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

James Redding and Kenneth Scott[1] were indicted for armed robbery (Ill. Rev. Stat. 1973, ch. 38, par. 18—2) and aggravated battery (Ill. Rev. Stat. 1973, ch. 38, par. 12—4) and convicted after a jury trial. They appeal from their convictions and raise the following issues for review: (1) whether the State proved the defendants guilty of armed robbery beyond a reasonable doubt; (2) whether the State proved the defendants guilty of aggravated battery beyond a reasonable doubt; (3) whether the defendants were denied a fair and impartial trial where the prosecutor, during closing argument, commented on defendant's silence at the time of his arrest; and (4) whether the trial court erred when it conducted voir dire during the absence of Kenneth Scott.

The following evidence was presented at the trial. Paula Hargraves testified that on September 20, 1972, at about 6 p.m., she opened Paula's Place. Later that evening, at about 12 midnight, two men arrived, one man walked to the bar and asked for cigarettes while his companion stood near the juke box. After one assailant, identified by the witness as

---

[1] Scott filed a motion to adopt the brief of Redding and to file a supplemental brief which was to include one additional point. The motion was allowed and the brief was filed which raised one additional matter: point four in the issues.

James Redding, moved to the center of the bar, he returned to a table where Ms. Hargraves, Julius McGruder, Floyd Johnson and another customer were seated, brandished a weapon, and announced a stickup. Following the announcement, Redding told the patrons to put their watches and wallets on the table and they complied. The customers were then taken or forced into the bathroom, but John Watts was asked to remain with the confederates. Shortly after being placed in the bathroom, the witness heard two shots and, when she exited from the bathroom, she saw Watts lying behind the bar with blood on his right shoulder. Ms. Hargraves testified that she ran outside where she saw a light colored car driving away. Then the witness returned to the bar, examined her cash register and discovered about $220 missing. On September 29, 1972, the witness testified that she viewed a lineup and picked Redding as one of the assailants.

The next witness to testify was John Watts. Watts testified that he arrived at Paula's Place at about 8 p.m., to clean up the basement and, at 10:30 p.m., he walked upstairs to the lounge to watch television. Around midnight, three young men entered the lounge and asked Paula Hargraves for cigarettes. Watts walked behind the bar to procure the cigarettes, when the assailant, identified by the witness as Redding, pointed a revolver at Watts and announced a stickup. The witness recalled that another individual armed with a gun stood between Redding and Ms. Hargraves' table. After the patrons were placed in the bathroom, Watts was ordered to open the cash register and money was removed from the register while a third man, identified by the witness as Scott, placed liquor in a bag. Watts testified that the confederates became upset with the owner's dog, and shot him in the shoulder as he attempted to duck behind the bar. At a lineup, Watts identified three of the assailants and the fourth man was recognized during a court appearance.

Julius McGruder, an off-duty Chicago policeman, testified that he arrived at the tavern about 10:30 p.m. After he arrived, the witness sat down and began playing cards. Shortly thereafter, three men walked into the establishment with guns and a fourth man stood by the bar. According to McGruder, Scott had an automatic weapon and Redding had a small caliber revolver. Scott ordered the customers to place their belongings, which included McGruder's Lucien Piccard watch, on the table, and McGruder complied with the defendant's wishes. After the defendants collected the valuables, the patrons were instructed to go into the bathroom. Then the witness heard two gunshots so he ran out of the bathroom, looked around, and discovered Watts lying behind the bar with a bloody shoulder. When McGruder walked outside the tavern, he saw a 1965 Mercury speeding away from the scene. On September 29, 1972, McGruder viewed a lineup and identified Scott and Redding. After

viewing the lineup, Officer Copeland returned his Lucien Piccard watch which was identified by its serial number.

Leonard Bajenski, one of the arresting officers, testified that on September 29, 1972, he and other officers arrested the two defendants along with their co-indictees. While handcuffing Scott, the officer noticed that Scott was wearing a Lucien Piccard watch. The watch was removed from Scott's arm and was taken to the station where it was inventoried by Officer Copeland. Bajenski testified that the watch was returned to Officer McGruder when he identified the watch at the police station.

The next witness called to testify was Officer Lawrence Copeland. Copeland testified that he was one of the arresting officers and that he observed the watch being removed from Scott's arm after his arrest. He also testified that a 1965 Mercury was parked in front of 8925 South May with two bullet holes in the trunk.

After the State rested its case, the defendants testified in their own behalf. Redding testified that he did not remember where he was on the night of September 19, 1972, but he remembered that he was not in an establishment called Paula's Place. The witness also testified that he did not shoot or rob anyone.

Then Kenneth Scott was called to the stand to testify. He could not remember where he was on the night of the robbery, but testified that he had never been at Paula's Place. Scott also denied perpetrating the stickup or having a watch on at the time of his arrest.

■■ The defendants contend that the State failed to prove them guilty of armed robbery beyond a reasonable doubt. They specifically argue that the State failed to demonstrate that property was taken from both the person and presence of the alleged victims, as charged in the indictment. Armed robbery is defined as the taking of property from the person or presence of another by the use of force or by threatening the use of force, while armed with a dangerous weapon. (*People v. Was* (1974), 22 Ill. App. 3d 859, 863, 318 N.E.2d 309; Ill. Rev. Stat. 1973, ch. 38, par. 18—1, 18—2.) The evidence revealed that the defendants walked into the tavern, brandished weapons, and announced a stickup. This evidence was sufficient to establish two material elements of the offense of armed robbery: (1) the requirement of being armed with a dangerous weapon, and (2) the threatening use of force. The only question remaining is whether the evidence establishes that property was taken from the person or presence of the victims. The law requires that the State establish ownership of the property by the victim (*People v. Franklin* (1974), 22 Ill. App. 3d 775, 781, 317 N.E.2d 611), and that the property had value. (*People v. Was* (1974), 22 Ill. App. 3d 859, 863, 318 N.E.2d 309.) Paula Hargraves testified that she owned Paula's Place and that she discovered that approximately $220 had been removed from the cash register when

it was examined after the robbery. This evidence establishes that property of value was taken from the proprietor of the lounge.

The defendants' next contention is that the evidence failed to establish that money was taken from Watts' person, although they admit that property was taken from his presence. A robbery is committed when a person takes property from the person *or* presence of another (Ill. Rev. Stat. 1973, ch. 38, par. 18—1), rather than from the person *and* presence of the victim as charged in the indictment. After considering the defendants' contention, we concluded that we would not hold the State to a higher burden of proof than that mandated by the statute because the State inadvertently put the word "and" where the word "or" should have been in the indictment. Where the indictment for the offense of robbery or armed robbery alleges ownership of the property in the victim who is an employee, the State may meet the requirements of the proscription by proving that the victim had possession, custody, or control of the property. (*People v. Franklin* (1974), 22 Ill. App. 3d 775, 781, 317 N.E.2d 611.) We think that the State's evidence established that Watts had custody or control of the property since he was an employee of the tavern who assisted the owner.

The defendants also argue that the evidence was insufficient to establish that Julius McGruder lost a watch, since neither the watch nor the sheet upon which the serial number was transcribed at the time of purchase was produced at trial. A review of the evidence reveals that McGruder relinquished control of his watch during the robbery and that it was returned at the police station after a lineup. Moreover, two officers reported recovering a "Lucien Piccard" watch from Scott's arm at the time of his arrest. Notwithstanding the fact that the watch was never produced at trial, it was later stolen in a burglary, the evidence reveals that a Lucien Piccard watch was taken in the robbery, that it was found on Scott's arm at the time of his arrest, and that it was returned to the victim. We think that the evidence sufficiently establishes that a Lucien Piccard watch was the one taken in the robbery. Consequently, we hold that the defendants were proved guilty of armed robbery beyond a reasonable doubt.

The defendants also contend that they were not proved guilty of aggravated battery beyond a reasonable doubt. The aggravated battery statute is violated when a person who, in committing a battery, uses a deadly weapon. (Ill. Rev. Stat. 1973, ch. 38, par. 12—4(b)(1).) The evidence discloses that Watts was shot when one of the confederates became upset and fired at the proprietor's dog but wounded Watts. Physical contact was made with Watts when the bullet entered his shoulder and the gun, which clearly constitutes a deadly weapon, was the instrument used to cause the bodily harm. We hold that this evidence

brings the defendants' conduct within the reach of the aggravated battery statute since they both participated in the criminal acts.

■■■ The defendant's third contention is that he was denied a fair and impartial trial when the prosecutor, during closing argument, commented on his failure to inform the police of his whereabouts at the time of the crime. Defendant feels that he was prejudiced by the comment and argues that there were no facts in evidence on this issue. We agree with the defendant that he has a constitutional right to remain silent at the time of his arrest (*Miranda v. Arizona* (1966), 384 U.S. 436, 468, 16 L. Ed. 2d 694, 86 S. Ct. 1602), and that the prosecutor's comment on defendant's silence was improper. However, there was a timely objection to this improper comment which was sustained by the court and followed with an instruction to the jury to disregard the comment. By instructing the jury after sustaining the objection, the court reduced the prejudicial effect, if any, of the comment. In a case like the one at bar, a reversal is not dictated unless the error influenced or prejudiced some of the jurors to the extent that they could not be fair and impartial. (*People v. Manzella* (1974), 56 Ill. 2d 187, 200, 306 N.E.2d 16.) The defendants failed to demonstrate that real justice had been denied or that the jury's verdict or the court's judgment resulted from such error. Consequently, we hold that the prosecutor's comment constituted harmless error that will not culminate in a reversal because of the overwhelming evidence of guilt.

Finally, Scott argues that the court erred by continuing voir dire examination, a critical stage of the proceedings, in his absence. The State, on the other hand, argues that the defendant voluntarily waived his right to be present as is permitted by section 115—4(h) of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 115—4(h)). The waiver occurred on the second day of voir dire examination when Scott's attorney made a motion for a continuance because he was ill. Even though the motion was denied, the court informed counsel that the defendant could waive his presence which is what Scott elected to do after discussing the matter with counsel. When court resumed the following day, the judge revealed that a doctor at Roseland Community Hospital had confirmed the fact that the defendant was in the hospital but explained that he would be out of the hospital by Tuesday, Monday being a court holiday. Counsel for Scott made another motion for a continuance but the court denied the motion, explained to the jurors that Scott was absent with his permission, and completed voir dire.

■■ The law is clear that a defendant in a criminal case has an absolute right to be present at his trial and this right can only be waived by the accused. (*People v. Mallett* (1964), 30 Ill. 2d 136, 195 N.E.2d 687.) However, voluntary absence from the court is deemed a waiver of the right to be present. (*People v. Steenbergen* (1964), 31 Ill. 2d 615, 618, 203

N.E.2d 404.) In the instant case, the facts establish that the defendant was voluntarily absent from the courtroom the next day, although it appears that he was ill. The facts also reveal that the judge only completed voir dire the second day. Considering the fact that this court has previously found defendant's voluntary absence due to illness to be a waiver of his right to be present (*People v. Meschino* (1973), 10 Ill. App. 3d 557, 294 N.E.2d 712 (abstract opinion)) and considering the fact that defendant was voluntarily absent, we do not think the court erred by completing jury selection.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

DIERINGER and BURMAN, JJ., concur.