THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SHEILA HAMILTON, Defendant-Appellant.

Fourth District   No. 14405

Opinion filed November 4, 1977.

Richard J. Wilson and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

C. Joseph Cavanagh, State's Attorney, of Springfield (Robert C. Perry and Jeffrey B. Levens, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

After trial by jury in the Circuit Court of Sangamon County, defendant Sheila Hamilton was convicted of two counts of attempt murder and one count of armed robbery. She was sentenced to terms of imprisonment of 4 to 12 years for armed robbery and 10 to 25 years for each of the attempt murder convictions with each of the three sentences to run concurrently with the others. Defendant appeals contending that (a) the court erred in denying her pretrial and during trial motions to suppress testimony concerning pretrial lineup and in-court identification of her as an occurrence participant, and (b) that her guilt was not proven beyond a reasonable doubt.

Occurrence and identification evidence at trial largely rested on the testimony of Jessie White and Charles Wallace. Both testified that they were at their second floor apartment at 1705½ East Stuart, Springfield, the evening of November 5, 1976. They stated that in response to a doorbell ring, White had gone to the downstairs entrance and returned to the apartment with two individuals. Shortly after their entry into the apartment, one of the individuals exhibited a gun and directed Wallace and White to lie on the floor. Wallace and White further testified that their

hands and feet were then bound and they lay face down. White stated that the other visitor then also displayed a gun and took approximately $100 from his, White's, pockets. Both testified that, after a period of time, the intruders shot each of them in the head and departed. White and Wallace were subsequently transported to a hospital.

Each testified that he had identified Mike Mosley as being one of their assailants. White described Mosley's companion as wearing a big blue coat, denim pants with a light stripe down each side, a denim hat, glasses, black ball-toed shoes, and a silver earring in her left ear. Wallace described the assailant as being dressed in men's clothes, having light brown skin, standing 5'6" to 5'7" tall and weighing 125-130 lbs.

The parties do not dispute that three individuals participated in a November 8 lineup, the defendant, Marietta Tinsley, and one other individual, all of whom were black females. The defendant wore a pair of blue jeans with a light blue stripe on the side, a shirt and an earring. A black and white photograph of the lineup introduced into evidence indicates that the lineup participants were of approximately the same size and wore similar clothing.

White and the defendant testified at the pretrial hearing on defendant's motion to suppress. White's testimony was substantially the same as that he gave at trial. He testified on each occasion that, upon viewing the lineup, he identified the defendant as one of his assailants. In testimony at the suppression hearing, he stated that he recognized the defendant by "the face" and "the look," and not by her clothing. The defendant testified at the hearing on the motion to suppress that prior to the lineup she had been instructed to put on the clothing that she had worn on the evening of November 5. This included a pair of blue jeans with a light blue stripe on the side and a shirt.

James Dickerson, chief of detectives for the Springfield police department, did not testify at the hearing on the motion to suppress but testified at trial. He stated that upon arresting the defendant, he had asked her to bring with her the same clothing which she had worn on the night of November 5 and that later, upon her arrival at the police station, he had directed her to put that clothing on and to participate in the lineup wearing that clothing.

Defendant's contention that the denials of the motions to suppress were error is based upon her argument, that the lineup was conducted in an unduly suggestive manner, making testimony concerning her identification there inadmissible and making inadmissible White's later in-court identification.

■■ Since the Supreme Court's decision in *Neil v. Biggers* (1972), 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375, evidence of pretrial identifications of an accused by a witness must be excluded at trial only

where both the procedure used was unnecessarily suggestive and there is a substantial likelihood of misidentification. In determining whether a pretrial confrontation is unnecessarily suggestive, courts must look to the totality of the circumstances surrounding it. *Stovall v. Denno* (1967), 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967.

White testified that prior to Dickerson's taking defendant into custody, he, White, had described to Dickerson the clothing worn by the female assailant. Defendant contends that because the clothing she was required to wear in the lineup was similar to that described by White, the lineup was unduly suggestive. She relies upon the decision in *People v. Franklin* (1974), 22 Ill. App. 3d 775, 317 N.E.2d 611, where arresting officers had also placed an accused in a lineup and required him to wear some of his clothing which fit the description given by witnesses as to the attire of one of the perpetrators of the crime. That clothing included a beige coat with a fur collar, a pair of "hot pink" pants and an afro-styled wig. The court found this procedure to be unnecessarily suggestive. However, the *Franklin* court acknowledged that,

> "We are aware that there are cases wherein courts have held that pretrial confrontations were not so suggestive as to amount to a denial of due process even when the defendant is viewed in clothing described as being worn by the offender. [Citations.]" 22 Ill. App. 3d 775, 784, 317 N.E.2d 611, 617.

The evidence here shows only slight suggestiveness. The photograph of the lineup does not show the attire of the participants below the bottom line of their smocks. The styles of the smocks were similar although the colors could have been different. The parties agree that all wore jeans although defendant was the only one to have a stripe at the side. Defendant was also the only one to have on an earring which she apparently wore entirely of her own volition. The clothing worn by the defendant was in no way as flamboyant as that worn in *Franklin*.

Moreover, any suggestiveness present was not the result of defendant being forced to wear clothing seized from her by police and required to be worn because it corresponded to the description given by a victim as in *Franklin*. Rather, the suggestiveness arose because the defendant had selected as the clothing she wore on the evening in question, clothing which fit White's description. She made the selection. Under these circumstances, the procedure used would tend to aid the accuracy of the identification.

■■ White testified both at the pretrial suppression hearing and at trial that he identified the defendant as being Mosley's companion immediately upon viewing the lineup. At the pretrial hearing, he stated that he recognized the defendant by "the face" and "the look" and denied at that hearing and at trial that the identification resulted in any way from

viewing defendant's clothing. The courts of this State have repeatedly held confrontations between witnesses and accused not to be unnecessarily suggestive where, although the accused wore clothing matching that described as being worn by the offender, the witness' identification of the defendant was based on characteristics other than that clothing. See *People v. Wicks* (1969), 115 Ill. App. 2d 19, 252 N.E.2d 698; *People v. McMorris* (1974), 17 Ill. App. 3d 364, 308 N.E.2d 291; and *People v. Weathers* (1974), 23 Ill. App. 3d 907, 320 N.E.2d 442, *rev'd on other grounds*, 62 Ill. 2d 114, 338 N.E.2d 880.

■■ We find the lineup here not to have been unduly suggestive.

Defendant's argument that she was not proven guilty beyond a reasonable doubt is based upon her claim that the identification evidence at trial was insufficient.

White admitted that while he was in the hospital recovering from his wounds, he identified a picture of a person other than the defendant as being Mosley's companion. Detective Charles Harvell testified that the person whose picture White identified was Marietta Tinsley. She was later selected as one of the three parties to participate in the lineup. White admitted at trial that he had seen her before.

Dickerson testified that while Wallace was in the hospital, he, Wallace, had told him that "two dudes" had done the shooting, thus implying that there had been two male assailants. However, Dickerson indicated that this statement was made while Wallace was bleeding, in much pain and somewhat incoherent.

■■ It has long been the rule in this State that the identification testimony of one witness, if positive and the witness credible, is sufficient to convict even though the testimony is contradicted. (*People v. Crenshaw* (1959), 15 Ill. 2d 458, 461, 155 N.E.2d 599, 602.) Here, both White and Wallace were credible witnesses and their identifications made at trial were positive. Their prior uncertainties would not prevent a reasonable jury from being able to conclude that defendant's guilt was proved beyond a reasonable doubt.

The conviction and sentence are affirmed.

Affirmed.

CRAVEN, P. J., and REARDON, J., concur.