THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GEORGE LARK *et al.*, Defendants-Appellants.

First District (5th Division)   Nos. 82—2783, 82—2784 cons.

Opinion filed September 28, 1984.

James J. Doherty, Public Defender, of Chicago (Frank P. Madea, Assistant Public Defender, of counsel), for appellant George Lark.

Steven Clark and Bruce Mosbacher, both of State Appellate Defender's Office, of Chicago (Frank P. Madea, Assistant Public Defender, of counsel), for appellant Tommie L. McKinnie.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin Sweeney, and James J. Pink, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial, defendants George Lark and Tommie McKinnie were each convicted of three counts of armed robbery (Ill. Rev. Stat. 1981, ch. 38, par. 18—2), and sentences were imposed on all three counts. Lark challenges his conviction on grounds that a suggestive lineup led to his mistaken identification in court, improper testimony concerning his criminal record deprived him of a fair trial, and the trial court erred in dealing with a juror who dissented from the verdict. McKinnie joins in the last of Lark's contentions, and claims further that improper comment in closing argument denied him a fair trial and that multiple convictions violated the one-act one-crime principle. The following facts are relevant to our decision.

At about 2 p.m. on February 4, 1982, two men entered Helen's House of Fashion located at 13301 South Brandon in Chicago. The men browsed for a short while, then produced guns and forced the store's proprietor, Helen Zajac, along with two job applicants, Gail Pazour and Connie Tabor, to crawl to a dressing room. The men took Zajac's purse and ring as well as money, clothing and jewelry from the store. During the robbery, Nancy Fitzpatrick entered the store; one of the robbers held a gun on her, took her purse, and ordered her to join the others in the back of the store. Another prospective customer, Marian Harter, encountered similar treatment when she entered the store several minutes later.

Meanwhile, John Davy, who had driven Pazour and Tabor to Helen's, was waiting for them in his car, which was parked in front of the store. Davy became suspicious when he observed two men carrying clothes from the store to a light blue 1973 Ford station wagon with no license plates. As Davy approached the store's entrance, Pazour and Tabor emerged and announced that they had been robbed. Davy pursued the station wagon in his car until he saw a Chicago police squad car on 130th Street, at which time he flagged down Officer Mary Puchalski and told her that the men in the station wagon had robbed Helen's House of Fashion. Officer Puchalski then took up the chase, lights flashing and siren sounding, and Davy followed.

Officer Puchalski pursued the station wagon from 130th and Torrence to 108th and Hoxie, where the station wagon collided with a parked car. The two occupants fled on foot while police converged on the accident scene. By this time, police responding to a call from Helen

Zajac had obtained descriptions of the perpetrators. The police sought two black males: one, five feet 10 inches, 170 pounds, wearing a black leather jacket over a sweatshirt, with the hood of the sweatshirt hanging out from the collar of the jacket; the other six feet, 180 pounds, wearing blue jeans and a three-quarter length brown leather coat over a waist length black leather jacket.

Chicago Police Sergeant O'Hara apprehended Tommie McKinnie and brought him back to the accident scene, where John Davy positively identified him as one of the robbers. Sergeant O'Hara testified that he recovered a right hand glove from McKinnie's pocket and found a matching left glove in the station wagon. In addition to the stolen clothing, jewelry and purses in the station wagon, Sergeant O'Hara observed license plates under the seat which were registered to George Lark, but which belonged on another car. He also noticed a three-quarter length brown leather coat.

Approximately two hours later, after residents of the 107th block south on Torrence reported a man moving in and out of back yards, Chicago Police Officer Charles Springer arrested defendant George Lark. During cross-examination of Sergeant O'Hara, defense counsel initiated the following dialogue:

> MR. PRIDE: Did you have an occasion to have a radio communication with an officer named Springer on that date?
>
> SERGEANT O'HARA: I imagine I did, yes, sir.
>
> Q. Did you tell Officer Springer that George Lark was the man who was wanted?
>
> A. I told him that we were looking for George Lark in connection with this robbery.
>
> Q. No one on the—no one who had been a victim of the robbery or present when the robbery took place knew George Lark's name, did they?
>
> A. No, sir.
>
> Q. And you gave Sergeant Springer George Lark's name before you even saw George Lark on that date, didn't you?
>
> A. Yes, sir.
>
> MR. PRIDE: I have no further questions. By the way, just one further question. *You knew George Lark before that date, didn't you?*
>
> THE WITNESS: I had an occasion to be at a scene of an arrest prior to that where George Lark had been arrested.
>
> MR. PRIDE: *And you knew—were you familiar with the name George Lark?*
>
> A. No, not really, it wasn't until after this particular date that

I realized this was the same individual from the previous incident.

Q. You went and rechecked it, that is why you remembered it from before?

A. No, sir.

MR. PRIDE: No further questions." (Emphasis added.)

On redirect, the prosecution elicited the following:

"ASSISTANT STATE'S ATTORNEY: Now, you stated on a prior occasion you had seen George Lark arrested?

A. This is correct.

Q. At that time that he was arrested on that occasion, did you know his name?

A. No, sir.

Q. And when was the first time that you were able to connect the name George Lark with the person you had seen arrested on a prior occasion?

A. *After his rap sheet, his police record sheet came back and I noticed the name.*" (Emphasis added.)

At about 6:45 p.m. on the day of the robbery, the witnesses separately viewed a lineup at the police station. Lark challenged the lineup in a pretrial suppression motion, arguing that the lineup was suggestive because he was handcuffed and forced to wear the three-quarter length brown leather coat which was recovered from the station wagon. The trial court viewed photographs of the lineup and noted generally as to age, height, build, coloring and facial hair that it was "a pretty good array." Specifically, the judge stated that it was difficult to see the handcuffs, and that another man in the lineup wore a coat that was nearly indistinguishable from that worn by Lark. The court found that the lineup was not suggestive and denied the motion to suppress.

Helen Zajac, Connie Tabor and John Davy each positively identified both Lark and McKinnie. Gail Pazour stated that Lark and McKinnie "looked like" the robbers, and Nancy Fitzpatrick said that McKinnie looked like one of the robbers. Marian Harter was unable to identify anyone. Defense counsel presented photographs of the lineup to the eyewitnesses at trial and explored the basis for their identifications. In closing argument, counsel for defendant Lark posited that the witnesses identified the coat and not the defendant.

Defense counsel also suggested in closing argument that police officers were not above lying, and that once a defendant was charged, the police had an incentive to obtain a conviction. In rebuttal argument, the assistant State's Attorney said:

"The hardest thing about my job, Ladies and Gentlemen of the

Jury is listening to people, attorneys stand here and say police officers get up on that stand, take an oath and commit perjury, that my witnesses get up on the stand, take an oath and commit perjury.

* * *

Well, it's not perjury, Ladies and Gentlemen. I resent that. I'm going to ask you, once again, to look at that evidence with me."

The jury deliberated and returned verdicts of guilty, but upon defendant's motion to poll the jury, the first juror to answer disavowed the verdicts. The trial court excused the jury to continue deliberations, then requested suggestions from counsel. Defense counsel asked that the jury be allowed to deliberate indefinitely; the court stated that the jury would deliberate to a unanimous verdict or a deadlock. The prosecution suggested that the court inquire whether the jury could resolve the issue; the judge declined to inquire, stating that the jury had not indicated any inability to resolve issues. The trial court asked whether the defense objected, but no objection was entered.

Following further deliberations, the jury again returned verdicts of guilty on three counts of armed robbery as to each defendant, and when polled, the jurors acknowledged their verdicts. George Lark was sentenced to three concurrent terms of 20 years' imprisonment. Tommie McKinnie was sentenced to three concurrent 10-year terms of imprisonment. Both appeal.

OPINION

Lark first contends that the unnecessarily suggestive lineup led to irreparable misidentification. He argues that the witnesses' descriptions were fatally flawed by their failure to mention facial hair or a mark under the eye, and that the witnesses based their identifications on the three-quarter length brown leather coat and handcuffs which he was forced to wear. The State maintains that the issue was waived, that the lineup was not unduly suggestive, and that the in-court identifications were reliable.

■ We reject the State's two-fold argument concerning waiver. It is true that a defendant's failure to raise an issue in his motion for a new trial normally constitutes a waiver of that issue on appeal. (*People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856.) In this case, however, Lark's post-trial motion specified error in the trial court's denial of the motion to suppress, and the State's contrary assertion is simply incorrect.

■ In the second part of its argument, the State relies upon *People v. Edwards* (1978), 74 Ill. 2d 1, 383 N.E.2d 944, *cert. denied* (1979),

442 U.S. 931, 61 L. Ed. 2d, 299, 99 S. Ct. 2862, and maintains that Lark waived the identification issue by failing to include photographs of the lineup in the record on appeal. The court in *Edwards* held that defendant failed to preserve a record sufficient to find reversible error where isolated remarks in closing argument were transcribed but no context for the remarks appeared in the record. (74 Ill. 2d 1, 7-8, 383 N.E.2d 944.) We believe that *Edwards* stands for two propositions: (1) that the appellant bears the burden of preserving a record which demonstrates the alleged error, and (2) that context is essential to a finding of improper comment. We distinguish the instant case in that we are unaware of any case holding that photographs are essential to a finding of suggestiveness, and the State advances no reason that the law should be so. We conclude that the record is sufficient to decide the issue on the merits, and that defendant preserved the issue by specific reference in his post-trial motion.

On the merits, defendant's contention fails. While the goal of a lineup should be to present the question of identification in as neutral a context as possible (see *Israel v. Odom* (7th Cir. 1975), 521 F.2d 1370, 1374), a pretrial identification will warrant reversal only if unnecessary or impermissible suggestiveness creates a substantial likelihood of irreparable misidentification. (*People v. Lee* (1969), 44 Ill. 2d 161, 167-69, 254 N.E.2d 469.) Here, the trial court negated defendant's claim of suggestiveness by explicitly finding that the handcuffs were barely noticeable and the coat was nearly indistinguishable from another in the lineup.

■ Moreover, it appears that the most suggestive aspect of the lineup, the handcuffing, was attributable to defendant's refusal to wear the coat. In *People v. Yates* (1983), 98 Ill. 2d 502, 456 N.E.2d 1369, our supreme court held that a defendant may not complain of a suggestive lineup where his or her misconduct drew the attention of the witness. The court there noted that the police may compel participation in a lineup in order to protect suspects from misidentification and to promote the early release of innocent persons. (*People v. Yates* (1983), 98 Ill. 2d 502, 523, 456 N.E.2d 1369; see also *People v. Nelson* (1968), 40 Ill. 2d 146, 152-53, 238 N.E.2d 378.) We question the necessity of requiring a defendant to wear clothing identified by witnesses (see *People v. Franklin* (1974), 22 Ill. App. 3d 775, 317 N.E.2d 611), especially before those witnesses have attempted an identification based on facial features and other inherent characteristics. However, the cases indicate that this is a permissible investigative technique (see, *e.g., People v. Pecho* (1936), 362 Ill. 568, 573, 200 N.E. 860; *People v. Owens* (1970), 126 Ill. App. 2d 379, 384-85, 261 N.E.2d 785. But see *People v. Frank-*

*lin* (1974), 22 Ill. App. 3d 775, 317 N.E.2d 611 (procedure criticized)), and we view defendant's handcuffing as a reasonable response to his resistance to a proper, if ill-advised, police demand. In sum, we conclude that defendant was primarily responsible for what suggestiveness may have existed, and so we reject his claim.

■ Finally with respect to the identification issue, we observe that the reliability of the identifications justified their admission at trial. Even unnecessary pretrial suggestiveness will not prevent the admission of identification testimony at trial where the totality of circumstances indicates that the identification is reliable; the witness' opportunity to view the perpetrator, degree of attention, certainty, and the time elapsed between commission of the crime and identification are all relevant to reliability. (*People v. Manion* (1977), 67 Ill. 2d 564, 571, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) In this case, three witnesses independently and positively identified Lark as one of the perpetrators within several hours of the crime. Zajac and Tabor observed the perpetrators under indoor lighting for several minutes, and both testified that their attention was focused on Lark because he asked several questions; Zajac testified that she became suspicious when Lark insisted that she leave the counter in order to help him. Davy observed the perpetrators at close quarters in broad daylight when his suspicions were aroused. The witnesses gave detailed descriptions which fit the defendants. Although they neglected to mention facial hair and a mark under the eye, these matters as well as the suggestiveness of the lineup were brought to the jury's attention and were resolved against the defendant. See *People v. Hefner* (1979), 70 Ill. App. 3d 693, 695-96, 388 N.E.2d 1059; *People v. Rosenborgh* (1974), 21 Ill. App. 3d 676, 684, 315 N.E.2d 545, *cert. denied* (1975), 421 U.S. 919, 43 L. Ed. 2d 787, 95 S. Ct. 1584.

Lark next contends that the mention of his rap sheet was irrelevant and prejudicial. The State responds that the rap sheet reference was waived and proper. We agree with the State.

■ Defendant failed to object to the reference at the time, and failed to specify it as error in his post-trial motion, and so we deem the issue waived. (See *People v. Carlson* (1980), 79 Ill. 2d 564, 575-76, 404 N.E.2d 233; *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856.) Moreover, we note that defense counsel first elicited testimony concerning defendant's criminal record, raising an inference that Sergeant O'Hara's previous acquaintance affected Lark's arrest. Thus, the reference in redirect was relevant to explain the previous acquaintance and to dispel the inference of connection raised by the defense. We conclude that the response was invited and therefore proper. See *People v.*

*Burage* (1961), 23 Ill. 2d 280, 282-83, 178 N.E.2d 389, *cert. denied* (1962), 369 U.S. 808, 7 L. Ed. 2d 555, 82 S. Ct. 651.

■ Lark finally contends that the trial court erred in failing to give a deadlock instruction when a juror disavowed the verdict. McKinnie joins this allegation of error, and argues in addition that the trial court should have inquired as to the reason for disavowal. The State rejoins that the issue was waived and that the trial court did not abuse its discretion by directing the jury to redeliberate.

In *People v. Taylor* (1967), 36 Ill. 2d 483, 224 N.E.2d 266, our supreme court recognized that although failure to request an instruction is frequently treated under the waiver rule, such failure often removes the onus of error entirely. The court there reasoned that the absence of a particular instruction may well work to the benefit of the accused, and so a defendant cannot allege error where no such instruction was requested. (36 Ill. 2d 483, 490-91, 224 N.E.2d 266.) In this case, a guilty verdict was returned and one of the jurors disavowed the verdict. From the defendants' perspective, the potential benefits of directing redeliberation were clear. Having voluntarily accepted the benefits of the procedure, we cannot condone this allegation of error based on the result. At the very least, defendants expressly waived this issue.

■ We also agree with the State that the trial court did not abuse its discretion in this matter. The purpose for polling jurors is to inform the trial court of a disagreement, mistake, or need for reconsideration; if a juror expresses dissent, the trial court may direct further deliberations or may discharge the jury. (*People v. Kellogg* (1979), 77 Ill. 2d 524, 528-29, 397 N.E.2d 835.) Defendants' argument here assumes a disagreement and coercion, whereas the trial court noted at the prosecutor's instance that there was no such indication. Mistake or need for reconsideration are equally plausible explanations. In any event, the remedy chosen by the trial judge was proper, and the second polling indicated the jurors' unequivocal assent to their verdicts.

■ Next, McKinnie contends that the prosecutor's improper comment in closing argument deprived him of a fair trial. He argues that the assistant State's Attorney vouched for the credibility of the State's witnesses. The State argues that the comments were waived, proper or harmless. Because defendant failed to object contemporaneously to the comments, and because he failed to specify such comments in his post-trial motion, we consider any error to have been waived. See *People v. Carlson* (1980), 79 Ill. 2d 564, 576-78, 404 N.E.2d 233.

■ In addition, improper comment is not reversible error unless it results in substantial prejudice to the accused. (*People v. Baptist* (1979), 76 Ill. 2d 19, 28-29, 389 N.E.2d 1200.) A remark which pledges

the prosecutor's personal or professional reputation for the credibility of a witness is improper. (*People v. Bitakis* (1972), 8 Ill. App. 3d 103, 106-07, 289 N.E.2d 256.) We reject the State's argument that the prosecutor's remarks were invited by defense comment that police officers might lie, and we believe that the prosecutor's allusion to the "hardest thing about [his] job" and his "resentment" of the possibility that "his witnesses" might lie tended to inject the prosecutor's personal and professional ethos into the credibility determination. However, the prosecutor's remarks in question, while improper, did not amount to reversible error. The offending comments were directed at bolstering the police officers' testimony, but that testimony was incidental on the question of guilt. In view of the strong eyewitness and circumstantial evidence in this case, we believe the jury's verdict could not have been otherwise. We conclude that the error was harmless.

■■■ Finally, McKinnie contends that his conviction of three offenses violated the one-act one-crime principle. Our supreme court's opinion in *People v. Butler* (1976), 64 Ill. 2d 485, 356 N.E.2d 330, disposes of defendant's contention. In that case, two victims were simultaneously robbed by two perpetrators. The court held that the crime of robbery was personal to the victim, and both defendants could properly be convicted and sentenced for both robberies. *People v. Butler* (1964), 64 Ill. 2d 485, 488-89, 356 N.E.2d 330; accord, *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731.) Here, defendants were separately convicted of the robberies of Helen Zajac, Nancy Fitzpatrick and Marian Harter, and their concurrent sentences shall stand.

For the foregoing reasons, the judgments of the trial court are affirmed.

Affirmed.

MEJDA, P.J., and SULLIVAN, J.* concur.

---

*Justice Kenneth E. Wilson heard the oral argument in this case. Following his death Justice John J. Sullivan was substituted, listened to the tapes of the oral argument and read the briefs and record.