THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SHERMAN MORISSETTE, Defendant-Appellant.

First District (4th Division)   No. 84—2901

Opinion filed November 20, 1986.—Rehearing denied December 29, 1986.

432

Sherman Morissette, of Chicago, for appellant, *pro se.*

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Peter D. Fischer, and Mary T. Nicolau, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE LINN delivered the opinion of the court:

Following a bench trial, defendant, Sherman Morissette, was convicted of armed robbery (Ill. Rev. Stat. 1981, ch. 38, par. 18—2(a)) and armed violence (Ill. Rev. Stat. 1981, ch. 38, par. 33A—2). Morissette represented himself *pro se* at trial. At sentencing, Morissette was adjudged an habitual criminal and, pursuant to the Habitual Criminal Act (Ill. Rev. Stat. 1981, ch. 38, par. 33B—1), was sentenced to the Illinois Department of Corrections for a term of life imprisonment without parole.

On appeal Morissette contends that the cause should be reversed and remanded for a new trial, or alternatively, that the cause be re-

manded for resentencing. Morissette bases his contentions on his belief that the trial court prejudicially erred by: (1) failing to suppress evidence concerning a lineup at which he was identified by the victim as the victim's assailant (Morissette contends the lineup was suggestive); (2) denying his motion to appoint a bar association attorney and subsequently allowing him to represent himself at trial; (3) denying him his sixth amendment rights of compulsory process and production of documentary evidence helpful to him; and (4) sentencing him pursuant to the Habitual Criminal Act where the habitual-criminal statute (Ill. Rev. Stat. 1983, ch. 38, par. 33B—1) is unconstitutional.

We affirm the decision of the trial court.

BACKGROUND

Sherman Morissette was found guilty of stealing a taxicab in the course of committing an armed robbery against the taxicab driver. The facts adduced at trial indicate that during the evening hours of December 24, 1983, Charlie Adams, the complaining witness, was working as a taxicab driver for Yellow Cab Company. Sometime that evening, Adams picked up a passenger, later identified by Adams as Morissette, at or near the intersection of 87th Street and Stony Island, in Chicago. Morissette was wearing a cap and scarf but removed the scarf once inside the cab. After driving Morissette to his destination of 91st Street and East End, Adams stopped his cab and turned on the inside light in order to collect Morissette's fare. When Adams turned around to collect the fare, Morissette pointed a black pistol at Adams' head, demanding all of Adams' money. Adams replied that he had no money, and Morissette ordered Adams out of the cab. Morissette allowed Adams to retrieve his coat from the cab before Morissette drove the cab away, leaving Adams in the street.

After Morissette drove away, Adams hailed a different cab and rode to a drug store where he telephoned the police, informing them of the armed robbery. The police directed Adams to come to the station to file a report of the incident. Adams left the drug store and hailed another cab to take him to the police station at 71st and Cottage Grove. On the way to the station, Adams noticed a police paddy wagon parked in front of Jackson Park Hospital, and he asked his cab driver to stop there.

Upon entering the hospital, Adams spotted and approached two police officers to whom he reported the incident. Adams testified that one of the police officers called in over the police radio and related both Adams' description of Morissette and the number (726) of the stolen taxicab. Adams then returned home where he contacted Yellow

Cab Company, reporting to the dispatcher that his cab was stolen. The dispatcher later testified that he had received such a call and that he made a notation of it for the cab company manager, although the Yellow Cab Company records did not evidence such a report of the armed robbery.

Chicago police officers James Vellehas, Steve Kubiak, and Louis Velez testified for the prosecution as to the events leading up to Morissette's arrest and subsequent lineup identification. Vellehas and Kubiak were working together on the night of the armed robbery and monitored a message over their police radio regarding an incident in which Yellow Cab number 726 was stolen at gunpoint. The "flash" message also described the suspect as a male black in his early thirties. Vellehas and Velez were working together on December 27, 1983, and they arrested Morissette that night after an automobile and foot chase.

According to Vellehas and Velez, they noticed Yellow Cab number 726 proceeding eastbound on 92nd Street on December 27, 1983. The driver was a male black in his thirties. Vellehas noted that he recalled the flash message that he and Kubiak heard three nights earlier, so he positioned his squadrol behind the taxicab and began to follow Morissette as he drove. Although a radio check on the status of the cab came up clear, Vellehas attempted to curb the cab by activating the siren and flashing lights on his vehicle. Morissette responded by immediately accelerating the taxicab, giving way to the car chase. When Morissette stalled the cab in an alley, a foot chase ensued. Morissette was apprehended after an altercation in which he resisted the police. Morissette identified himself as Charles Adams and asserted that the cab belonged to him. The officers transported Morissette to the Fourth District police station.

On the following evening, Morissette was placed in a lineup where the real Charles Adams identified Morissette as the armed robber who stole his cab from him on the evening of December 24, 1983. Because Morissette had been injured while trying to resist police prior to his arrest, Morissette appeared in the lineup with bandages on his head. He also wore a trench coat and was asked to speak while being viewed by Adams.

Morissette was represented by the public defender on his motion to suppress the above identification. After a hearing, the trial court denied the motion. During the hearing on the motion to suppress, Morissette moved the trial court to allow him to proceed *pro se*. The record indicates that the trial court proffered to Morissette, as prescribed by Illinois Supreme Court Rule 401(a) (87 Ill. 2d R. 401(a)),

the proper admonishments concerning self-representation. Subsequently, Morissette was allowed to proceed *pro se* on the balance of the hearing on the motion and later at trial, where the witnesses named above testified as indicated.

The trial court, after reviewing all of the evidence presented by the State and by defendant, found Morissette guilty of armed robbery and armed violence. Pursuant to the Habitual Criminal Act (Ill. Rev. Stat. 1981, ch. 38, par. 33B—1), the State then petitioned for imposition of a natural-life sentence on the basis that Morissette had prior armed-robbery convictions and was therefore subject to sentencing as an habitual criminal.

At the sentencing hearing, the State offered evidence of Morissette's prior armed-robbery convictions. The record discloses that in 1979, Morissette was convicted on two counts of armed robbery after pleading guilty to stealing a cab after robbing the driver at gunpoint, and for later robbing at gunpoint a passenger he picked up while driving the stolen cab. He was sentenced to two concurrent terms of eight years. In 1976 Morissette also pleaded guilty to two armed-robbery counts and was convicted and sentenced to two concurrent terms of four years to four years and a day. In mitigation, Morissette stated that he had served in the military and was a licensed cosmetologist. He also argued that the Habitual Criminal Act was unconstitutional.

The trial court, after reviewing the evidence presented at trial and at sentencing, noted Morissette's extensive criminal record, which included eight felony convictions in all. The trial court concluded that Morissette was an appropriate candidate for a natural-life sentence and thereupon sentenced Morissette to the Illinois Department of Corrections for a term of natural life. From his conviction and this sentence, Morissette now appeals.

Opinion

I

██ We first address Morissette's contention that he was prejudiced by the trial court's refusal to suppress evidence concerning the lineup at which he was identified as the offender in this case. Specifically, Morissette contends that the lineup was impermissibly suggestive because in a two-way mirror arrangement, he was the only participant in the lineup wearing head bandages and because he was singled out to wear a trench coat, pull the lapel of the coat over his face, and say the words, "This is a stick-up."

It is well settled that where a defendant moves to suppress identi-

fication testimony, he has the burden of establishing that the pretrial identification procedure was unnecessarily suggestive. Once defendant has done so, the evidence will then be suppressed unless the State is able to show, by clear and convincing evidence, an independent basis of reliability. *People v. Garcia* (1983), 97 Ill. 2d 58, 73, 454 N.E.2d 274, 279; *People v. McTush* (1980), 81 Ill. 2d 513, 520, 410 N.E.2d 861, 865.

In the instant case, Morissette cites *United States v. Wade* (1967), 388 U.S. 218, 233, 18 L. Ed. 2d 1149, 1160-61, 87 S. Ct. 1926, 1935-36, where the Supreme Court gave the following examples of suggestive pretrial identification procedures:

"[T]hat the other participants in a lineup were grossly dissimilar in appearance to the suspect, that only the suspect was required to wear distinctive clothing which the culprit allegedly wore, that the witness is told by the police that they have caught the culprit after which the defendant is brought before the witness alone or is viewed in jail, that the suspect is pointed out before or during a lineup, and that the participants in the lineup are asked to try on an article of clothing which fits only the suspect."

These examples, however, are inapposite to this case where there is no evidence of similar improprieties.

In addition, the lineup in this case consisted of five black men. There was no significant difference in their height and weight, and they all wore coats and had mustaches. Morissette and two other participants wore blue jeans. Although Morissette was the only person wearing bandages on his head, we agree with the trial court's reasoning that this was not suggestive, since there were no bandages, cuts, bruises, or marks on Morissette's person when he was first viewed by Adams during the armed robbery. Furthermore, there is no evidence to suggest that Morissette was dressed as he was at the time of the robbery, which, even if true, in and of itself would not necessarily render the lineup unduly suggestive. See *People v. Lark* (1984), 127 Ill. App. 3d 927, 469 N.E.2d 728 (requiring defendant to wear clothing identified by witness was permissible); *People v. Guyon* (1981), 101 Ill. App. 3d 799, 428 N.E.2d 998 (requiring only defendant to wear hairnet and jacket allegedly worn by victim's assailants was permissible).

■ Morissette also contends that he was prejudiced because he was the only participant in the lineup required to repeat the phrase, "This is a stick-up." Despite conflicting evidence as to whether he was the only participant required to do this, this contention, like all others raised by defendant, must fail since the record evinces clear

and convincing evidence of an independent basis of reliability for Adams' identification of Morissette as the offender in this case.

■■ Reliability has been held to be the linchpin in determining the admission of identification testimony. (*Manson v. Brathwaite* (1977), 432 U.S. 98, 114, 53 L. Ed. 2d 140, 154, 97 S. Ct. 2243, 2253.) As a guideline for evaluating the likelihood of misidentification, we consider: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated at the time of the confrontation; (5) the length of time between the crime and the confrontation; and (6) any acquaintance with the criminal prior to the crime. (*Neil v. Biggers* (1972), 409 U.S. 188, 199-200, 34 L. Ed. 2d 401, 411, 93 S. Ct. 375, 382; accord, *People v. McTush* (1980), 81 Ill. 2d 513, 521, 410 N.E.2d 861, 865.) These elements of reliability are to be weighed against the corrupting effects of the alleged suggestive identification (*People v. Nolden* (1980), 91 Ill. App. 3d 532, 414 N.E.2d 1124), and each case must be considered on its own facts (*People v. Son* (1982), 111 Ill. App. 3d 273, 443 N.E.2d 1115).

■ Applying the above analysis to this case, it is clear that there are sufficient indicia of reliability of Adams' lineup identification of Morissette to permit its admission into evidence. Most notably, Adams had ample opportunity to view Morissette during the encounter in Adams' taxicab prior to and after Morissette announced the armed robbery. Adams asked Morissette his destination and then explained that he would not drive to that area prior to driving Morissette to an alternate destination. During the drive, Adams said he viewed Morissette through the rear-view mirror, and stated that he saw him face-to-face with the taxicab's inside light on as he turned around to collect the fare from Morissette.

Adams also testified that he further viewed Morissette when he bent down to retrieve his coat after Morissette ordered him from the cab. In addition, due to his attentiveness, Adams gave an accurate description of Morissette to the police prior to Morissette's arrest. So accurate was this description that Officers Vellehas and Velez curbed Morissette in the cab on December 27, 1983, even after a radio license check came back clear. Adams identified Morissette only three days after the incident and again identified him in open court. Based on the totality of the circumstances in this case, we are convinced that Adams identified Morissette based on his memory of the events at the time of the armed robbery. Accordingly, there is a sufficient independent basis for the identification to remove any risk of misidenti-

fication. Thus, we hold that the trial court acted properly in ruling not to suppress evidence of Morissette's lineup identification.

## II

As his next assignment of error, Morissette contends that his case was prejudiced when the trial court denied his motion to appoint a bar association attorney and subsequently allowed him to represent himself at trial. We disagree.

■■ First, although Morissette has an unqualified right to assistance of counsel, he does not have an unqualified right to choose his court-appointed attorney. (*People v. Johnson* (1982), 109 Ill. App. 3d 511, 440 N.E.2d 1992.) Rather, absent a showing of good cause, it is within the court's discretion to deny such a request. (*People v. Dorsey* (1982), 109 Ill. App. 3d 218, 440 N.E.2d 394, *cert. denied* (1983), 460 U.S. 1053, 75 L. Ed. 2d 933, 103 S. Ct. 1503.) A review of the record before us fails to show good cause for appointing a bar association attorney in place of the public defender as Morissette requested.

Morissette argues that the public defender failed to follow Morissette's instructions in defending the case. Specifically, Morissette complained that the public defender failed to subpoena and assess the testimony of key defense witnesses, and in his reply brief, Morissette argues that the defender's case load was so heavy that he could not properly attend to Morissette's case. Given the public defender's pretrial preparation of motions, witnesses, and investigations which occurred in this case, we find the record to clearly contradict Morissette's unsubstantiated allegations that the public defender failed to effectively represent him below.

■■ Second, Morissette contends that the trial court erred in granting his motion to defend this case *pro se* because the trial court failed to conduct a hearing to determine his competence to do so. In Illinois, waiver of the right to counsel by the accused is governed by Supreme Court Rule 401(a) (87 Ill. 2d R. 401(a)). This rule provides for a procedure to ensure that a defendant understands the nature and consequences of proceeding as his own lawyer. (See *People v. Baker* (1983), 94 Ill. 2d 129, 445 N.E.2d 769; *People v. Graves* (1985), 134 Ill. App. 3d 473, 480 N.E.2d 1142.) In the case at bar, the record clearly demonstrates that Morissette made his waiver of right to counsel only after the trial court followed this procedure by admonishing him in open court (pursuant to Supreme Court Rule 401(a)) of the nature of the charges brought against him, the minimum and maximum sentences prescribed under the law, as well as his right to counsel and the consequences of self-representation. 87 Ill. 2d R. 401(a).

■ Further, although Rule 401(a) does not require a separate hearing to determine whether Morissette had the minimal competence to proceed *pro se*, his competence can be inferred from the objective criteria commonly used to make such determinations, to wit: his age, level of education, capacity, and involvement in prior legal proceedings. (See *People v. Kessler* (1983), 113 Ill. App. 3d 354, 360-63, 447 N.E.2d 495, 499.) Here, Morissette was 27 years old, had previously been employed as a licensed cosmetologist, and his criminal record shows familiarity with the criminal justice system. (See *People v. Black* (1979), 68 Ill. App. 3d 309, 385 N.E.2d 899.) In fact, throughout the trial, Morissette demonstrated his legal sophistication and his ability to conduct a defense through motion practice, calling and examining witnesses, and arguing to the court. (See *People v. Jackson* (1978), 59 Ill. App. 3d 1004, 376 N.E.2d 685; *People v. Smith* (1975), 33 Ill. App. 3d 725, 338 N.E.2d 207.) As such, we find that he made an intelligent waiver of his right to counsel such that his contention that he was denied effective assistance of counsel is doomed.

### III

Morissette also contends that he was denied his sixth amendment rights of compulsory process and production of documentary evidence in this case when the State only listed one of two Officer Kubiaks on their answers to discovery and when the State failed to proffer to Morissette copies of the police report, notations of the flash message, and the cab company report concerning the robbery in this case.

■ First, we do not see the State's failure to list the second Officer Kubiak as prejudicial under the circumstances of this case. Supreme Court Rule 412(a)(i), provides, "[T]he State shall, upon written motion of defense counsel, disclose *** the names and last known addresses of persons whom the State intends to call as witnesses, together with their relevant written or recorded statements ***." (87 Ill. 2d R. 412(a)(i).) This rule is in keeping with the overall purpose of the discovery rules to prevent surprise or unfair advantage which prejudices another party at trial. Further, as the State correctly asserts, it is incumbent upon Morissette to show that the State's noncompliance with this rule resulted in prejudice to his case. *People v. Anderson* (1977), 46 Ill. App. 3d 607, 360 N.E.2d 1371.

In the instant case, even if the State should have included the names of both Officer Kubiaks, Morissette has failed to show any resulting surprise or prejudice to his case due to the fact that the existence of the second Kubiak was undisclosed. Indeed, the State contends that it only intended to call Steve Kubiak, star number 5801, to

establish that the armed robbery had actually occurred. Steve Kubiak allegedly heard the December 24, 1983, radio call pertaining to the incident. The second Kubiak, whom the State neither called to testify nor intended to call to testify, was allegedly present only when Morissette was transferred to the station. Nowhere in the record is it evidenced that omission of this information from the discovery sheets, or the second Kubiak's failure to testify, caused Morissette either surprise or prejudice in this case.

Second, we find that Morissette was not denied his sixth amendment right to production of documents where, as here, the documents sought from the State were never in the State's possession. It is axiomatic that, as a practical matter, the failure of the prosecutor to disclose allegedly exculpatory evidence not in his possession does not violate due process, since under such circumstances, nothing has been suppressed. (See *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194; *People v. Parker* (1983), 113 Ill. App. 3d 321, 447 N.E.2d 457; *People v. Palmer* (1982), 111 Ill. App. 3d 800, 444 N.E.2d 678.) Here, Morissette argues that he was prejudiced by the State's failure to proffer to him documentation of the arrest (police report), flash message, and cab company report concerning the instant charge. However, the record evinces that in this case this evidence could not be produced by any of the respective custodians, nor was it in the possession of the State or any of its agents. As such, this evidence was not available to either the prosecution or the defense. Accordingly, we cannot hold the State accountable for failing to provide this evidence to Morissette.

It is also our opinion that production of these documents would not serve to exculpate Morissette given the facts of this case. Here the complaining witness testified as to the details of the robbery, and he clearly viewed Morissette during the crime, later identifying him both in a lineup and at trial. In addition, two police officers testified that they monitored an armed-robbery call during the evening hours of December 24, 1983, and that one of the officers recognized the stolen cab and defendant three days later as a result of that radio call. The officers also testified that Morissette was arrested by them after an attempt to curb him as he drove Yellow Cab number 726, giving way to an automobile and foot chase. At no time did the police lose sight of Morissette after he abandoned the cab and attempted to elude and later physically resist the police.

The record also evinces that the dispatcher on duty at Yellow Cab Company on the night in question stated that Adams called in to report that cab number 726 was stolen. Further, only three days after

the incident, Adams identified Morissette as the man who stole his cab at gunpoint and subsequently identified him at trial. Consequently, evaluated in the context of the entire record, the fact that the reports referred to by Morissette were themselves missing has no bearing on this case, and similarly their absence does not create a reasonable doubt as to his guilt, given the instant record.

## IV

■■■ Finally, we address Morissette's contention that the habitual-criminal statute (Ill. Rev. Stat. 1983, ch. 38, par. 33B—1), under which he was sentenced to a mandatory term of life imprisonment without parole, is unconstitutional. The State contends that Morissette has waived our review of this issue by failing to raise this objection at sentencing and in his post-trial motion. (See *People v. Caballero* (1984), 102 Ill. 2d 23, 31, 464 N.E.2d 233.) Even constitutional errors not raised before the trial court are generally waived on appeal. (*People v. Visnack* (1985), 135 Ill. App. 3d 113, 118, 481 N.E.2d 744, 747.) However, since this alleged error affects Morissette's substantial rights, we will address this issue under the plain-error doctrine. 87 Ill. 2d R. 615(a).

■■■ The habitual-criminal statute provides that every offender who is three times convicted of a Class X felony or murder within a 20-year period shall be sentenced to life imprisonment. (Ill. Rev. Stat. 1983, ch. 38, par. 33B—1.) Defendant offers several arguments that this statutory penalty is unconstitutional. The first of these is his claim that it penalizes him for his prior wrongs in 1976 and 1979, thereby violating constitutional provisions regarding *ex post facto* laws and double jeopardy. We find this argument to be unpersuasive.

In *People v. Washington* (1984), 125 Ill. App. 3d 109, 465 N.E.2d 666, this court held that the habitual-criminal statute does not violate either the United States or Illinois constitutional provisions regarding *ex post facto* laws and double jeopardy. In that case we cited *People v. Mason* (1983), 119 Ill. App. 3d 516, 524, 456 N.E.2d 864, 869, for the proposition that recidivist statutes have been consistently upheld as not violative of *ex post facto* provisions. Further, in *Washington* we determined that the statute does not punish defendant a second time for his previous convictions; rather, these prior adjudications are used only to establish matters in aggravation to support the disposition authorized for a third serious offense. (*People v. Washington* (1984), 125 Ill. App. 3d 109, 117, 465 N.E.2d 666, 671; *cf. People ex rel. Carey v. Chrastka* (1980), 83 Ill. 2d 67, 77-78, 413 N.E.2d 1269, 1274-75 (construing the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, par. 701—

1 *et seq.*).) Having been presented with no reason to change our opinion in this case, we continue to hold that the habitual-criminal statute does not violate constitutional *ex post facto* and double jeopardy provisions.

Morissette next contends that the statute gives unbridled discretion to the prosecutor to determine whom to seek to sentence to life imprisonment, thereby violating the due process and equal protection clauses of the fourteenth amendment and the cruel and unusual punishment clause of the eighth amendment. We shall discuss the eight amendment argument as part of Morissette's third constitutional challenge.

The argument that the habitual-criminal statute is unconstitutional because it gives the prosecution unbridled discretion in deciding whether to seek imposition of a life sentence was refused by us in the *Washington* case. There we recognized that the habitual-criminal statute does not explicitly delegate to the prosecutor the power to choose which defendants shall be sentenced under its terms; rather, its provisions apply to all defendants who meet the statute's criteria of two previous Class X felony or murder convictions. (*People v. Washington* (1984), 125 Ill. App. 3d 109, 465 N.E.2d 666; *cf. People v. Withers* (1983), 115 Ill. App. 3d 1077, 450 N.E.2d 1323, *cert. denied* (1984), 465 U.S. 1052, 79 L. Ed. 2d 726, 104 S. Ct. 1332.) Accordingly, the statute places no discretion in the hands of the State to determine which defendants qualify for a term of life imprisonment; rather, precise guidelines are set forth to enable the trial judge to determine the applicability of the recidivist statute. (See also *People v. McNeil* (1984), 125 Ill. App. 3d 876, 881, 466 N.E.2d 1058, 1061; *People v. Tobias* (1984), 125 Ill. App. 3d 234, 240, 465 N.E.2d 608, 613-14.) Therefore, we conclude that the habitual-criminal statute does not grant to the prosecutor unbridled discretion in deciding whom to seek to sentence to life imprisonment and does not violate due process or equal protection.

Morissette's third argument is that the habitual-criminal statute is unconstitutional because it requires the imposition of life imprisonment while foreclosing consideration of any mitigating factors making the sentence proportionate to the offender or the offense, violating due process and the eighth amendment protection against cruel and unusual punishment. This same argument was recently rejected by this court in *People v. Hartfield* (1985), 137 Ill. App. 3d 679, 484 N.E.2d 1136. The *Hartfield* court relied on *People v. Withers* (1983), 115 Ill. App. 3d 1077, 1090, 450 N.E.2d 1323, 1332, *cert. denied* (1984), 465 U.S. 1052, 79 L. Ed. 2d 726, 104 S. Ct. 1332, where the

court declared that the Act did not violate the eighth and fourteenth amendments because two previous adjudications (here 1976 and 1979) have afforded the defendant the opportunity to present mitigating factors to a court.

Finally, it suffices to note that the habitual-criminal statute has been upheld repeatedly against constitutional attacks similar to those offered by Morissette in cases other than those discussed above. See *People v. Taylor* (1984), 102 Ill. 2d 201, 464 N.E.2d 1059; *People v. Coleman* (1984), 128 Ill. App. 3d 538, 470 N.E.2d 1277; *People v. Pettigrew* (1984), 123 Ill. App. 3d 649, 462 N.E.2d 1273.[1]

In sum, based on the facts and circumstances of this case, we find that Morissette's identification was properly admitted into evidence, that he was not denied effective assistance of counsel, that he knowingly and intelligently waived his right to be represented by an attorney, that he was not prejudiced in discovery, and that the Habitual Criminal Act (Ill. Rev. Stat. 1983, ch. 38, par. 33B—1) is constitutional.

Therefore, we affirm defendant's armed-robbery conviction and his sentence of natural-life imprisonment without parole.

Affirmed.

JIGANTI and McMORROW, JJ., concur.

---

[1]Morissette raises an additional question regarding the constitutionality of the Habitual Criminal Act in his second *pro se* supplemental brief filed August 14, 1986. According to Morissette, the statute (Ill. Rev. Stat. 1980, ch. 38, par. 33B—1) violates article IV of the Illinois Constitution (Ill. Const. 1970, art. IV, sec. 8) because, upon passage, the statute's purpose was not germane to the bill to which it was attached.

We have reviewed Morissette's second supplemental brief and find that it fails to show that the alleged violation prejudiced his substantial rights. Considering this, and in keeping with the plethora of case law finding the subject statute to be constitutionally sufficient, we hold that Morissette has waived this argument on appeal by failing to raise it at sentencing and in his post-trial motion. (See *People v. Visnack* (1985), 135 Ill. App. 3d 113, 118, 481 N.E.2d 744, 747.) Therefore, further consideration of this argument is unwarranted.