THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES KING, Defendant-Appellant.

First District (2nd Division)   No. 86—2530

Opinion filed December 30, 1988.

Steven Clark and Barbara Kamm, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund and Paula M. Carstensen, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BILANDIC delivered the opinion of the court:

Charles King and his codefendant were charged by indictment with armed robbery and theft. After a joint bench trial, both were found guilty of armed robbery. King was found to be a habitual criminal and sentenced to natural life in prison. He appeals his conviction and sentence. Codefendant, Timothy Barfield, is not involved in this appeal.

Defendant seeks a reversal of his conviction because he was denied effective assistance of counsel. He also contends that the trial court erroneously applied the Habitual Criminal Act and that the Act is unconstitutional. Ill. Rev. Stat. 1985, ch. 38, par. 33B—1.

The victim, Lawrence Kale, testified that on September 3, 1985, he was working at Stan's Amoco Station at 55th Street and Pulaski Road. At 12:40 a.m., he was sitting behind the counter when a black male, about 200-plus pounds, approximately 5 feet, 10 inches tall, entered and asked if he had change for a dollar. Kale identified this man to be the defendant. Kale turned to get the change but when he looked up again, the defendant was pointing a gun at him and said: "Give me all the money or I will kill you. I will shoot you." Kale began putting the change on the counter. Defendant then told Kale to stand back or he would shoot. When Kale took a few steps backward, defendant leaned over the counter and reached in and grabbed the money. Defendant then emptied a cigar box and put the money inside. After taking all the money, defendant again pointed the gun at Kale and told him to lie on the floor and not move.

Officers Robert Aye and Robert Gunnell testified that they were stopped at the light at 55th Street and Pulaski Road when the robbery occurred. They saw a black man exiting the gas station while carrying something. Both identified this man as the defendant. Defendant walked hurriedly to a brown Chevy in the alley. The hood to the Chevy was open and another man, identified as codefendant Barfield, was looking under the hood of the car. As the defendant approached the car, Barfield slammed the hood shut and entered the driver's side of the car. Defendant entered the passenger's side and they drove off.

The officers went into the gas station to confirm that a robbery had taken place and then immediately left to pursue the suspects. At 54th Street and Pulaski Road, they saw the brown Chevy heading toward them. They stopped the Chevy by pulling in front of it. The officers found codefendant Barfield seated at the driver's side and defendant crouched below the dashboard. Upon searching the car, the officer found the money and the cigar box. Defendant told the officers that the gun was thrown out of the car along the 5400 block of Komensky. The gun was recovered and the defendants were taken to the station.

At the station, Kale identified defendant in a lineup. He also identified the gun as well as the cigar box. At trial, it was stipulated that Barfield told authorities that he was forced at gunpoint to drive the defendant away. Defendant also told authorities that he forced Barfield to drive him away.

Rufus Fondren, defendant's stepfather, also testified for the State. He stated that he had seen defendant with codefendant Barfield on many previous occasions.

Dorothy Hawkins, a barmaid at Stone's Lounge, testified that Barfield had lived in the apartment above the bar. Although she could not state that she ever saw defendant and Barfield together, she said she saw defendant in the lounge during the period of time that Barfield lived upstairs.

At the close of the State's evidence, defendant declined to testify and rested his case. Defendant was found guilty of armed robbery. Barfield was also found guilty. After a hearing, defendant was found to be a habitual criminal and was sentenced to natural life imprisonment pursuant to the Habitual Criminal Act. This appeal followed.

## I ·

Defendant claims that he was denied effective assistance of counsel at his bench trial because defense counsel waived opening and closing arguments and did not cross-examine any of the State's witnesses.

The conduct of defense counsel throughout the proceedings was as follows.

In the beginning, the State had made an offer to King of 30 years in the Illinois Department of Corrections in exchange for a guilty plea to armed robbery. The court's suggestion was 20 years. Although King was willing to do this, the case was held over because codefendant Barfield's case was not ready for trial and the State wanted to dispose of both at the same time. Then, when the case was ready to

go to trial, the State indicated that King qualified under the Habitual Criminal Act and that the only possible sentence the court could impose was natural life. Lengthy discussions took place before the bench as to whether King qualified. Defense counsel argued strenuously against King's qualification as a habitual criminal.

The court found that because this was a sentencing matter and that the court did not even know if the defendant would be convicted at that time, his determination of whether defendant qualified would have to wait.

Defense counsel noted to the court that King never wanted a trial. She also stated that she couldn't advise King to plead guilty without any determination as to whether he would be sentenced as a habitual criminal. Therefore, the court suggested that King waive a jury, take a bench trial, and then if sentence need be imposed, the court would then consider the issue. King waived his right to a jury trial.

Counsel for codefendant Barfield took the lead in cross-examining the prosecution witnesses. Because of the nature of the case, further examination by defense counsel would have been redundant. Stipulation as to the defendant's address and the serial number of the weapon were routine and proper. Defendant does not cite any objections that should have been made but merely alleges that defense counsel made very few objections. Neither defendant testified. Defendant does not assert that he had a defense that was not presented and does not assert that he should have testified.

■■ In order to prove ineffective assistance of counsel, defendant must meet the two-prong test enunciated in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052:

> (1) that defense counsel's conduct fell below an objective standard of competence; and
>
> (2) that there is reasonable probability that but for the defense counsel's incompetence the outcome of the trial would have been different.

Defendant contends that this case is an exception to the *Strickland* rule and, therefore, he is not required to prove that "but for the defense counsel's incompetence the outcome of the trial would have been different," citing *United States v. Cronic* (1984), 466 U.S. 648, 80 L. Ed. 2d 657, 104 S. Ct. 2039. He contends that his defense counsel's conduct amounted to no representation at all and therefore prejudice should be presumed.

■ ■ *Cronic* states the circumstances where prejudice will be presumed. The first circumstance warranting a presumption of preju-

dice is when there is a complete denial of counsel. In *Martin v. Rose* (6th Cir. 1984), 744 F.2d 1245, defendant's counsel refused to participate in the trial under the belief that to do so would waive the pretrial motions or render the denial of the motions harmless error. After an opening statement in which counsel stated he would not participate, there were no objections, motions, or argument, nor did counsel participate in the jury selection. The Sixth Circuit Court of Appeals found this total lack of participation to deprive defendant of effective assistance of counsel without requiring a showing of prejudice. Prejudice was presumed.

*Cronic* further states that if counsel entirely fails to subject the prosecution's case to "meaningful adversarial testing," then there has been a denial of rights which makes the adversary process itself presumptively unreliable. (*Cronic*, 466 U.S. at 659, 80 L. Ed. 2d at 668, 104 S. Ct. at 2047.) Such was the case in *People v. Hattery* (1985), 109 Ill. 2d 449, 488 N.E.2d 513, *cert. denied* (1986), 478 U.S. 1013, 92 L. Ed. 2d 727, 106 S. Ct. 3314. In *Hattery*, defendant pleaded not guilty. In the opening statement, defense counsel conceded defendant's guilt, stating that the only issue before the jury is not guilt or innocence, but whether he deserves the death penalty. The Illinois Supreme Court found that the prosecution's case was not subjected to the "meaningful adversarial testing" required by the sixth amendment. The bottom line was that once a defendant pleads not guilty, counsel cannot concede guilt in hopes of receiving a more lenient sentence. "Even when no theory of defense is available, if the decision to stand trial has been made, counsel must hold the prosecution to its heavy burden of proof beyond reasonable doubt." 109 Ill. 2d at 465.

Our review of the record reveals that the defendant was effectively represented by counsel. Proper pretrial discovery was conducted and the evidence was evaluated. An attempt was made to work out a favorable plea agreement. Counsel vigorously resisted the application of the Habitual Criminal Act and required the State to meet its burden of proof. A proper post-trial motion was presented and a record preserved for appeal, particularly on the application of the Habitual Criminal Act. We therefore conclude that the conduct of counsel was not the type that would come within the purview of the authorities where prejudice to the defendant is presumed.

We further conclude that the defendant failed to prove ineffective assistance of counsel as required by *Strickland*. The defense was effective.

II

Defendant also contends that the trial court's order finding defendant a habitual criminal and sentencing him to natural life imprisonment should be reversed.

The Habitual Criminal Act states:

"(a) Every person who has been twice convicted in any state or federal court of an offense that contains the same elements as an offense now classified in Illinois as a Class X felony or murder, and is thereafter convicted of a Class X felony or murder, committed after the 2 prior convictions, shall be adjudged an habitual criminal.

\* \* \*

(e) Except when the death penalty is imposed, anyone adjudged an habitual criminal shall be sentenced to life imprisonment." Ill. Rev. Stat. 1985, ch. 38, par. 33B—1.

■ To sustain a life imprisonment sentence under the Habitual Criminal Act, the State must prove beyond a reasonable doubt that defendant committed three Class X felonies within a 20-year period of time. Furthermore, the statute provides that it is not the name given to the prior offense which qualifies it as one of the two predicate felonies. Rather, it is whether the offense contains the same elements as an offense now classified in Illinois as a Class X felony. *People v. Cannady* (1987), 159 Ill. App. 3d 1086, 1090, 513 N.E.2d 118, *appeal denied* (1987), 117 Ill. 2d 546.

■ In the instant case, the defendant's natural life sentence was premised upon a prior 1977 conviction for armed robbery, a 1981 Wisconsin conviction for second degree criminal sexual assault and robbery, and the armed robbery conviction in the instant case. This appeal concerns only the Wisconsin conviction.

In Wisconsin, defendant was convicted of second degree criminal sexual assault. The elements are: (1) sexual intercourse (2) by use of threat or force or violence. (Wis. Stat. §940.225(2)(a) (1979).) At the same time, defendant was also convicted of robbery. (Wis. Stat. §943.32(1)(b) (1979).) In Wisconsin, robbery is not an enhancement of sexual assault. Therefore, defendant was charged with both. In Illinois, however, this is classified as aggravated criminal sexual assault. (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(a)(4).) The elements of aggravated criminal sexual assault are: (1) a sexual act of penetration (2) by force or use of force (3) during the commission of a felony. Aggravated criminal sexual assault is a Class X felony. Ill. Rev. Stat. 1985, ch. 38, par. 12—14.

The trial court looked at both convictions and found that the of-

fense defendant committed in Wisconsin in 1981 contains the same elements as an offense now classified in Illinois as aggravated criminal sexual assault, a Class X felony. Such interpretation is proper under *People v. Cannady* (1987), 159 Ill. App. 3d 1086, 513 N.E.2d 118. As the trial court's decision regarding sentencing is entitled to great deference and weight (159 Ill. App. 3d at 1091), defendant's sentence is affirmed.

## III

■ Defendant also contests the constitutionality of the Habitual Criminal Act. It is well settled that the question of the constitutionality of a statute cannot be properly raised for the first time in a court of review, but must have been presented to the trial court and ruled upon by it, and the person challenging its validity must have preserved proper objections to such rulings. (*People v. Amerman* (1971), 50 Ill. 2d 196, 279 N.E.2d 353; *People v. Pettigrew* (1984), 123 Ill. App. 3d 649, 462 N.E.2d 1273.) Defendant has, therefore, waived these issues on review as he did not raise any objection at his sentencing hearing or in his post-trial motion that the Habitual Criminal Act was unconstitutional. See *People v. Visnack* (1985), 135 Ill. App. 3d 113, 481 N.E.2d 744, *appeal denied* (1985), 111 Ill. 2d 563.

Nonetheless, it suffices to note that the habitual criminal statue has been upheld against constitutional attacks similar to those offered by defendant. *E.g., People v. Morissette* (1986), 150 Ill. App. 3d 431, 501 N.E.2d 781, *appeal denied* (1987), 114 Ill. 2d 554.

Therefore, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SCARIANO and EGAN, JJ., concur.